

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -2  AM 8: 38

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JORGE M. ESTEVEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 00-0127** |
| **JAMEELA Y. ARSHAD, ET AL.** | **SECTION "R" (4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and(2)**.

On September 6, 2000, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] This Report and Recommendation is being issued in accordance with the Court's obligation to conduct a frivolous review pursuant to **Title 28 U.S.C. § 1915(e)**.

The Court will also consider six motions filed by the defendants, namely:

---

[1] 766 F.2d 179 (5th Cir. 1985).

[2] A cassette tape recording of this hearing is being maintained in the Magistrate Judge's office.

| DATE OF ENTRY |
|---|
| FEB  2 2001 |

**FEB 0 2 2001**

DATE OF MAILING

ree
Process
X Dktd
CtRmDep
Doc.No.

1.  **Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. 26)**, filed by the Louisiana Department of Safety and Corrections;

2.  **Motion to Strike Prayer for Attorney's Fees Under 42 U.S.C. § 1988 (Rec. Doc. 36)**, filed by Richard Stalder and Johnny Creed;

3.  **Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. 38)**, filed by Richard Stalder, Ed Day, Robert Tanner, and Johnny Creed;

4.  **Motion to Reurge Motions (Rec. Doc. 53)**, filed by defendants Richard Stalder, Ed C. Day, Robert Tanner, and Johnny Creed;

5.  **Motion to Reurge Motion to Dismiss (Rec. Doc. 57)**, filed the Louisiana Department of Public Safety and Corrections; and

6.  **Motion for Summary Judgment (Rec. Doc. 75)**, filed by "the defendants."

The above motions were noticed by counsel for hearing before the undersigned on various dates.[3]

## I.   Factual Background

### A.   The Complaint

While incarcerated in the Washington Correctional Institute ("WCI"),[4] the plaintiff, Jorge M. Estevez ("Estevez"), filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 and under a broad construction, Title II of the Americans with Disabilities Act ("ADA"), Title 42 U.S.C. § 12132, and the Rehabilitation Act, Title 29 U.S.C. § 794(a), against the following defendants:  WCI; the Louisiana Department of Corrections ("DOC"); Dr. Jameela Y. Arshad, a doctor at WCI; Ed C. Day, Warden at WCI; Robert Tanner, Assistant Warden at

---

[3] The motions have not been specifically referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(1)(B) and (C).

[4] Estevez has since been released from prison.  Rec. Doc. 73.

WCI; James Miller, Assistant Warden at WCI; Kathleen McGinnis, Hospital Administrator at WCI; Bessie Carter, Assistant Director of Nursing at WCI; Richard L. Stalder, Secretary of the Louisiana Department of Corrections; Dr. Tran, a doctor at WCI; Johnny Creed, Assistant Secretary of the Louisiana Department of Corrections; Jefferson Parish Sheriff Harry Lee;[5] Lynn McCloud, Executive Officer for WCI; and Bill Breland, Executive Officer at WCI.[6]

Estevez also urges state law claims of intentional and negligent conduct and respondeat superior against defendants Stalder, Day, Tanner and Creed, as well as personal breach of official duty against defendant Stalder. Each defendant has been sued in both their individual and official capacity. Estevez alleges that he was denied adequate medical care, rehabilitation therapy, and handicap recreation facilities at WCI.[7]

### B.    The *Spears* Hearing

During the *Spears* Hearing, Estevez testified that he sustained injuries in an accident prior to his arrest. He is partially-paralyzed on his right side. Although he has some movement on the right side, he has no control. In the Spring of 1999, while incarcerated at WCI, Dr. Arshad cancelled Estevez's physical therapy and urology appointments at the Louisiana Medical Center. Estevez indicated that he is now undergoing testing to assess his renal function. He also contends

---

[5] By Order and Reasons entered by the District Judge on October 26, 2000 and December 6, 2000, WCI and Sheriff Harry Lee were dismissed from this action. *See* Rec. Docs. 69 & 74.

[6] The defendants Arshad, Miller, McGinnis, Carter, Tran, McCloud and Breland have all been served, but have not answered the plaintiff's complaint and are not parties to any of the motions addressed herein.

[7] *See* Rec. doc. #1, Complaint; #19, First Amended Complaint; # 51 & #55, Second Supplemental Complaint.

3

that he is potentially diabetic, a condition that was ignored by Dr. Arshad and Dr. Tran while he was at WCI.

Estevez also testified that WCI is not equipped with an exercise area or proper exercise equipment for the handicapped.  He is therefore unable to exercise at the prison and is not otherwise receiving physical therapy for his paralysis.

## II.    Analysis

### A.    Standard of Review

Title 28, U.S.C. § 1915(e) requires the Court to sua sponte dismiss cases filed *in forma pauperis* upon a determination that the action is frivolous.  Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989).

However, the Court may not sua sponte dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).

For purposes of § 1915(e), an action lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).  Therefore, the Court must determine whether Estevez's complaint is based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see also Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir.), *cert. denied*, 516 U.S. 851 (1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**B.    Inadequate Medical Care**

Estevez claims that the medical care provided by Dr. Arshad and Dr. Tran was inadequate. He contends that the doctors at the Louisiana Medical Center of Louisiana in New Orleans recommended that he undergo physical therapy.    However, Dr. Arshad cancelled his appointments.

He also contends that he was experiencing urological problems and that his appointments were cancelled by Dr. Arshad.    Estevez also complained that he was in the process of undergoing tests to assess his renal function and that Drs. Arshad and Tran ignored the fact that he is potentially diabetic.

Inadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when the conduct  amounts to deliberate indifference to the prisoner's serious medical needs, which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety."  *Stewart*, 174 F.3d at 534 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).    While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a constitutional tort claim.  *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

In *Estelle*, the Supreme Court concluded that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 97 (citation omitted, footnotes omitted). To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 533 (*quoting Farmer*, 511 U.S. at 837).

For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (*quoting Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves*, 27 F.3d at 176 (citing *Farmer*, 511 U.S. at 842 & n.8).

In the instant matter, Estevez has alleged that Dr. Arshad and other members of the WCI medical staff cancelled his physical therapy appointments and other medical appointments without cause and without regard for his current physical and medical condition. He also alleges that the named prison officials were intentionally indifferent to his medical care in failing to assist him or provide relief to him in connection with his administrative grievance requests.

6

Estevez's allegations that he was receiving therapy for his physical restrictions, but that the therapy was abruptly discontinued states a claim for inadequate medical care. His contention that he suffered with untreated urological problems if true would also state a claim for inadequate medical care. Therefore, the Court finds that Estevez's claim of intentional indifference to his serious medical needs of partial paralysis and urological problems is not frivolous and should proceed forward.

## C.    Title II of the ADA

Estevez has also asserted a claim under the Americans With Disabilities Act. He contends that the prison does not have exercise equipment for the handicapped. Therefore, he is excluded from participation in WCI's exercise programs or activities because he is handicapped.

In *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 209-10 (1998), the United States Supreme Court recognized that state prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities.[8] Thus, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. § 12132.

Generally, a plaintiff proceeding under Title II must show that he is a qualified individual who, because of a disability, has been denied the opportunity to participate in or to obtain the benefits of services, programs, or activities offered by a public entity. *Moore v. Prison Health*

---

[8] The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." *See* 42 U.S.C. § 12102(2). Major life activities "include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."*Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998) (quotations omitted).

*Services, Inc.*, 24 F.Supp. 2d 1164, 1167 (D. Kan. 1998) (citing *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998)), *aff'd*, 201 F.3d 448 (10th Cir. 1999). Title II "afford[s] disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Moore*, 201 F.3d at 448.

In the instant case, Estevez alleges that he is substantially limited in a major life activity, consisting of his inability to use his entire right side. He testified that he suffers substantial limitations similar to the major life activities described in *Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998), such as performing manual tasks, walking, and working.[9] Estevez claims that he is denied the opportunity to participate in or obtain the benefits of the exercise services, programs and activities offered by WCI and that this prevents him from improving the use of his right side, including walking and working. Estevez has identified a substantial impairment of a major life activity, program or service, which he is being denied at the prison. Therefore, his ADA claim is not frivolous. *Cf. Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Moore*, 24 F. Supp. 2d at 1167.

However, insofar as he raises these claims against the defendants in their individual capacities, the claims are frivolous. Title II of the ADA which is applicable to a "public entity" does not include individuals.[10] Title 42 U.S.C. § 12131; *Berthelot v. Stadler*, No. 99-2009, 2000

---

[9] *See* footnote 8, *supra*.

[10] *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc),*cert. dismissed*, 120 S.Ct. 1265 (2000); *Lewis v. New Mexico Dept. of Health*, 94 F. Supp. 2d 1217, 1230 (D.N.M. 2000);*Calloway v. Boro of Glassboro Dept. of Police*, 89 F. Supp. 2d 543, 557 (D.N.J. 2000); *Yesky v. Pennsylvania*, 76 F.Supp. 2d 572, 575 (M.D. Pa. 1999).

WL 1568224 at *2 (E.D. La. Oct. 19, 2000) (McNamara, C.J.). The Court cannot read a remedy into an Act which it does not clearly proscribe. *Id.* at *2 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)). Therefore, the ADA claims asserted against each of the defendants in their individual capacity should be dismissed as frivolous pursuant to Title 28 U.S.C. § 1915(e).

### D. **The Rehabilitation Act**

Estevez also asserts claims under the Rehabilitation Act. The Rehabilitation Act prohibits discrimination against a qualified individual on the basis of a disability from participation in or the benefits of a program or activity which receives federal financial assistance. 29 U.S.C. § 794(a); *Chandler v. City of Dallas*, 2 F.3d 1385, 1389 (5th Cir. 1993), *cert. denied*, 511 U.S. 1011 (1994); *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991).

In order to establish a prima facie case of discrimination under the Rehabilitation Act, the plaintiff must prove 1) that he was a qualified individual with a disability; 2) the program or facility received federal funding; and 3) he was adversely treated solely as a result of the disability. *Chandler*, 2 F.3d at 1390.

Estevez contends that he is severely physically disabled as a result of his partial paralysis, and that the prison failed to provide physical therapy at the prison and otherwise prevented him from using the exercise facility and equipment, solely because of his disability. However, he has not alleged that the DOC or WCI receive federal funding in support of the exercise or medical programs at the prison. Thus, Estevez has failed to allege a critical element of a Rehabilitation

Act claim. For this reason, Estevez's Rehabilitation Act claims should be dismissed as frivolous pursuant to Title 28 U.S.C. § 1915(e).[11]

### E.    State Law Claims

Estevez also sets forth state law claims of general, intentional and negligent torts against the defendants arising out of the denial of his medical care at the prison pursuant to La. Civil Code art. 2315 *et seq*. He contends that the defendants have each engaged in activities, or omissions, to prevent him from obtaining medical care and physical therapy.

He further contends that defendants Stalder, Day, Tanner, and Creed are responsible under state law for the acts of their subordinates, which resulted in the inadequate medical care and the denial of exercise, as well as resultant damage to him. He contends that these defendants knew or should have known that he was being denied medical care and access to the exercise equipment, which prevented him from needed rehabilitation. He also specifically charges defendant Stalder with personal breach of his official duty to insure that WCI was providing appropriate medical care and rehabilitation.

### F.    Eleventh Amendment Immunity

#### 1.    Civil Rights and State Law Claims

Estevez has also sued the DOC and each of the defendants, in his or her official capacity as employees of the DOC, a State agency. The issue therefore is whether the DOC and the defendants in their official capacity enjoy Eleventh Amendment immunity from suit.

---

[11] In addition, even if his allegations were not frivolous, Estevez cannot pursue these claims against the defendants in their individual capacity. *Berthelot*, 2000 WL 1568224 at *2-3. In addressing this issue, the *Berthelot* Court again found that the Rehabilitation Act did not allow for a remedy against individual defendants since those defendants were not the recipients of federal funding. *Id.*

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own state. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a State's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. State Dept. of Highways & Public Transp.*, 780 F.2d 1268, 1271-73 (5th Cir.), *cert. granted*, 479 U.S. 811 (1986) and *aff'd*, 483 U.S. 468 (1987). However, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

The DOC is a department within the state government. La. Rev. Stat. Ann. § 36:401. Further, WCI is a state operated correctional facility under the control and administration of the DOC.[12] Thus, suit against the defendants Arshad, Day, Tanner, Miller, McGinnis, Carter, Stalder, Tran, Creed, McCloud, and Breland, in their official capacity is the equivalent of a suit against the DOC.

---

[12] *See* La. Rev. Stat. Ann. §36:408 defines the purpose and function of the Louisiana Department of Public Safety and Corrections. It provides as follows in pertinent part:

A.    The purpose for which the offices of the Department of Public Safety and Corrections are created shall be as set forth in this Section. . . .

G. (1)    The office of adult services shall perform functions of the state relating to correctional institutions, work release programs, and the probation and parole programs for adults, including functions relating to the operations and maintenance of . . . Washington Correctional Institute . . . .

(2)    In addition, it shall perform functions relating to the establishment and administrations . . . of a diagnostic and treatment center, which may consist of one or more branches, to undertake medical, educational, psychiatric, and social studies of persons committed to facilities under the jurisdiction of the office, all in accordance with applicable laws.

For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560 (M.D. La. 1985). Accordingly, Estevez's claims against the DOC and the defendants in their official capacity are barred by the Eleventh Amendment and should therefore be dismissed as frivolous pursuant to Title 28 U.S.C. § 1915(e).[13]

### 2.    The ADA Claims

The next issue for the Court's consideration is whether the DOC, and the defendants Arshad, Day, Tanner, Miller, McGinnis, Carter, Stalder, Tran, Creed, McCloud, and Breland, in their official capacity, are immune under the Eleventh Amendment from suit pursuant to the ADA.

Title II of the ADA unambiguously extends to state prison inmates. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 209-10 (1998). The United States Fifth Circuit Court of Appeals has specifically found that the State of Louisiana is not immune under the Eleventh Amendment from suit brought pursuant to the ADA. *Coolbaugh v. State of Louisiana*, 136 F.3d 430, 438 (5th Cir.), *cert. denied*, 525 U.S. 819 (1998).

This Court is bound by this precedent.[14] *See Neinast v. Texas*, 217 F.3d 275, 280 (5th Cir. 2000) (Circuit precedent bars our consideration of whether the ADA as a whole exceeds Congress's power to abrogate under § 5), *petition for cert. filed*, No. 00-263 (Aug. 16, 2000).

---

[13] Additionally, the DOC and the officers in their official capacity are not considered persons for purposes of Section 1983 actions. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).

[14] The United States Supreme Court is presently considering the issue of whether both Title I and II of the ADA are valid exercises of the Congress's power to under Section 5 of the Fourteenth Amendment to abrogate Eleventh Amendment immunity. *See University of Alabama at Birmingham Bd. of Trustees v. Garrett*, 120 S.Ct. 1669 (2000).

Therefore, Eleventh Amendment immunity does not extend to the State, or to the defendants in their official capacity, when the claims are pursued under the ADA. *Accord Berthelot v. Stadler*, No. 99-2009, 2000 WL 1568224 at *2, 3 (E.D. La. Oct. 19, 2000) (McNamara, C.J.) (ADA and Rehabilitation Act claims against state prison officials in their official capacity were viable).

### G.    Injunctive Relief

In addition to his request for monetary relief, Estevez also seeks injunctive relief against the defendants to provide certain medical care, physical therapy, and access to rehabilitation and exercise equipment. However, subsequent to the filing of this suit and the undersigned's prior reports, Estevez notified the Court that he has been released from WCI.[15] Therefore, his request for injunctive relief is moot. *Painter v. Whitley*, 686 F. Supp. 150 (E.D. La. 1988).

## III.    Motions to Reurge

The record shows that on June 6, 2000, the Court granted the plaintiff's Motion to Voluntarily Dismiss the case without prejudice.[16] Despite the voluntary dismissal, the defendants Stalder and Creed filed a Motion to Strike Prayer for Attorney's Fees (Rec. Doc. 36) and defendants Stalder, Day, Tanner and Creed filed a Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted (Rec. Doc. 38). Further, the DOC had a Motion to Dismiss (Rec. Doc. 26) pending, at the time the plaintiff's motion was granted. Thus, in light of the voluntary dismissal, the Court denied all three motions as moot.[17]

---

[15] Rec. Doc. 73.

[16] Rec. Doc. 37.

[17] Rec. Docs. 39, 41.

On September 8, 2000, prior to the reopening of the case, the defendants Stalder, Day, Tanner, and Creed filed a Motion to Reurge their previously filed motions.[18]  On September 15, 2000, the case was reopened.[19]  Thereafter, on September 26, 2000, the Department of Corrections filed a Motion to Reurge its previously filed Motion to Dismiss.[20]  The Court will now address the merits of all three motions.

## IV.    Motion to Strike

The defendants, Stalder and Creed, filed a Motion to Strike Plaintiff's Prayer for Attorney's Fees under Fed. R. Civ. P. 12(f).[21]  The defendants contend that pro se litigants, such as Estevez, are not entitled to an award of attorney's fees under Title 42 U.S.C. § 1988.  As such, the defendants request that the Court strike the prayer for attorney's fees.

Estevez, on the other hand, contends that he should be allowed to maintain his prayer "to compensate for their time in taking needed affidavits and monitoring defendants . . ."[22]  While he does not indicate whose time he is referring to, a broad reading suggests that Estevez is referring to potential counsel.

The Civil Rights Fee Awards Act of 1976, Title 42 U.S.C. § 1988, permits a court in its discretion to allow the prevailing party a reasonable attorney's fee as part of the costs of an action

---

[18]  Rec. Doc. 53.

[19]  Rec. Doc. 55.

[20]  Rec. Doc. 57.

[21]  Under Rule 12(f), a Motion to Strike should be filed prior to filing a responsive pleading or, if no such pleading has been filed, within twenty days of service of the preceding pleading. *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1547 n.20 (11th Cir. 1987).  The motion was filed prior to filing of a responsive pleading by these two defendants and within twenty days of service.  Rec. Doc. 23, 25, and 36.

[22]  Rec. Doc. 66, p.3.

to enforce a provision of, inter alia, Section 1983.  Estevez is admittedly not an attorney.  Nor, does the record indicate that he is currently represented by counsel.   Section 1988 does not allow for an award of attorney's fees to a pro se litigant.  *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987) (citing *Cofield v. City of Atlanta*, 648 F.2d 986, 987-88 (5th Cir. 1991)).  The Court therefore finds that the defendants, Stalder and Creed's **Motion to Strike Plaintiff's Prayer for Attorney's Fees (Rec. doc. #36)** should be **GRANTED** and the plaintiff's prayer for fees stricken.

**V.     Motions to Dismiss**

    **A.     Standard of Review**

    The DOC, Stalder, Day, Tanner, and Creed have also filed motions to dismiss for failure to state a claim for which relief can be granted.  When considering whether a complaint states a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court must take the factual allegations of the complaint as true and resolve any ambiguities regarding the sufficiency of the claim in the plaintiff's favor.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998);  *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir. 1996);  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284-85 (5th Cir. 1993).   Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  *Tuchman v. DSC Collins v. Morgan Stanley Dean Witter*, 14 F.3d 1061, 1067 (5th Cir. 1994).

### B.    The DOC's Motion to Dismiss

The DOC contends that it is entitled to Eleventh Amendment immunity against Estevez's claims for monetary damages brought pursuant to Section 1983.    Estevez has not filed an opposition.

The Court has previously addressed the application of Eleventh Amendment immunity in its frivolous review in Sections III, E and F of this report.    Therefore, the **DOC's Motion to Dismiss (Rec. doc. # 26)** on the same grounds should be **DENIED as moot**.

### C.    Stalder, Day, Tanner, and Creed's Motion to Dismiss

Defendants Stalder, Day, Tanner and Creed seek dismissal of the plaintiff's Section 1983 claims urged under a theory of vicarious liability.    Estevez has not filed an opposition to the defendants' motion.

The defendants do not specify whether the motion is urged in their individual or official capacity.    However, since the Court has already recommended dismissal of the § 1983 claims urged against the defendants in their official capacity, the Court need only consider the motion with respect to the claims urged against the defendants in their individual capacity.

### 1.    Day, Tanner and Creed

The defendants, Day, Tanner, and Creed, filed a Motion for Summary Judgment which is addressed in Section VII of this report.    In light of the Court's ruling on the Motion for Summary Judgment addressing the issue of qualified immunity, the defendants' Motion to Dismiss the plaintiff's claims against them in their individual capacity is moot.

## 2.    **Richard Stalder**

Estevez has alleged that Richard Stalder signed and implemented medical and duty status policies which prevented him from using the exercise and rehabilitation equipment and facilities at the prison, in violation of the ADA and state tort law. (Rec. Doc. 19, p. 23, 28, 29). He also claims that Stalder is responsible under state law and Section 1983 for failure to supervise, discipline, and train the DOC employees, who did not provide him with adequate medical care and rehabilitation services and related policies. (Rec. Doc. 19, p. 28, 29, 32, 33).

A supervisory official cannot be held liable pursuant to Section 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).    Thus, Estevez can urge a proper claim against Stalder in his individual capacity as a supervisor only if he alleges that Stalder was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act taken by Stalder and the alleged constitutional violation. *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983) (per curiam) (Secretary of Louisiana Department of Corrections could be held individually liable of personal involvement alleged);[23] *Painter v. Whitley*, 686 F.Supp. 150, 152 (E.D. La. 1988) (distinguishing a proper individual capacity claim from an official capacity claim); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

---

[23]    In *Barksdale*, the Fifth Circuit considered the individual liability of the Secretary of the Louisiana Department of Corrections for failing to provide adequate medical care at the Louisiana State Penitentiary as required by state law and the Constitution. The plaintiff alleged that the Secretary had failed to implement policies adequate to provide this care and in doing so violated his duty under state law and the Constitution. The Fifth Circuit found that this was adequate to state a claim against the Secretary personally. *Id.* at 748.

Personal involvement may render a supervisory official personally liable under Section 1983 for the wrongful acts of a subordinate when the supervisory official breaches a duty imposed by state or local law, and this breach causes the plaintiff's constitutional injury. *Barksdale*, 699 F.2d at 747-48; *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976)). A supervisory official cannot be liable merely for failing to adopt policies to prevent constitutional violations; however, he can be held liable if he affirmatively adopts policies which are wrongful or illegal. *Barksdale*, 699 F.2d at 748; *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir.1981).

Estevez has alleged that Stalder has implemented policies which prevent him from exercising and using rehabilitation equipment. He also alleges that Stalder is liable under Section 1983 for failure to supervise, discipline, and train the DOC employees who ultimately denied him adequate medical care and access to rehabilitative equipment. (Rec. Doc. 19, p. 28, 29, 32, 33). The plaintiff's allegations in that regard are sufficient to state a claim against Stalder under Section 1983. *Barksdale*, 699 F.2d at 747-748; *Reimer*, 663 F.2d at 1323; *Smith*, 158 F.3d at 911. The defendants' **Motion to Dismiss (Rec. doc. # 38)** should be **DENIED** to the extent it seeks dismissal of the plaintiff's Section 1983 claims against Richard Stalder in his individual capacity.

## VI.    Motion for Summary Judgment

Defendants Day, Tanner, Stalder and Creed also filed a Motion for Summary Judgment, contending that they are immune from being sued in their individual capacity pursuant to Section 1983. The defendants further contend that the plaintiff has failed to allege a causal connection between the defendants and his Section 1983 claims. Finally, the defendants contend that the plaintiff has failed to exhaust his administrative remedies.

18

The Court notes that the Assistant Louisiana Attorney General filed the motion on behalf of "the defendants." However, the Louisiana Attorney General has only enrolled on behalf of defendants Day, Tanner, Stalder, Creed, and the DOC. The affirmative defenses available to the individual defendants, such as qualified immunity, could only be plead by Day, Tanner, Stalder, and Creed. The Court will therefore consider the motion only on behalf of the defendants for whom the Assistant Louisiana Attorney General has made an appearance, Stalder, Day, Tanner and Creed.

### A.    Standard of Review

In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for considering a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court must therefore determine whether a genuine issue of material fact exists.

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court indicated that the party seeking summary judgment must point out the absence of evidence showing a genuine issue of material fact. *See Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute as to a material

fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

The party opposing summary judgment and who bears the burden of proof at trial must then "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co.v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). However, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

### B.    Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994). The relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and information the official possessed at the time of his allegedly unlawful conduct. *Febus-Rodriguez*, 14 F.3d at 91.

Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law or those who act where the law clearly proscribed the actions taken. *Anderson v.*

*Creighton*, 483 U.S. 635, 638-39 (1987).  Since a reasonable public official is expected to know the law, our inquiry is nothing more than an examination of whether the events at issue violated clearly established constitutional rights.  *Hall v. Ochs*, 817 F.2d 920, 924 (1st Cir.1987).  The "clearly established" inquiry necessarily incorporates "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The defendants contend that they are entitled to qualified immunity since the plaintiff has failed to allege a constitutional violation arising out of the "signing" of administrative grievance resolutions or that these defendants denied him adequate medical care.  In addition, the defendants contend that their actions with respect to the grievances and medical care were objectively reasonable.

The defendants contend that the actions taken at WCI were objectively reasonable for a number of reasons: 1) prison safety requires that the prison doctors have a right to reject medical directives from outside medical providers that are potentially dangerous in a prison environment; 2) Dr. Arshad, based on her medical expertise, determined that the weighted wrist strap provided to plaintiff for therapy was a danger; 3) plaintiff received physical therapy; 4)  on May 11, 1999, plaintiff was given a duty status which allowed for thirty minutes with leg weights after work call, which he refused; 5) use of the weights at the prison was an alternative form of physical therapy; 6) his medical records do not indicate that he is in need of treatment from a head injury specialist; and 7) the plaintiff continued to receive occupational and speech therapy.

However, Estevez does not merely suggest that the signing of the grievance forms violated the Constitution.  On the contrary, he claims that the defendants, through the administrative remedy process, intentionally denied him relief, consisting of medical care, physical therapy and

rehabilitation equipment, knowing that these items were not being provided to him, despite his disability and despite the treatment recommendations of the doctors at the Louisiana Medical Center at New Orleans.

The Supreme Court has made clear that Section 1983 permits recovery for serious physical harm "only where the defendant acts intentionally" or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. *See Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.) (citing *Canton v. Harris*, 489 U.S. 378, 388-390 (1989)) (deliberate indifference standard in Fourteenth Amendment municipal liability, police denial of medical treatment case), *cert. denied*, 506 U.S. 837 (1992). When liability for serious harm or death is at issue, a plaintiff must demonstrate "deliberate indifference" by showing (1) an unusually serious risk of harm; (2) defendant's actual knowledge of (or, at least willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address the known serious risk. *Manarite*, 957 F.2d at 956.

The standard of conduct imposed on defendants with respect to the care of inmates in custody at the WCI was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 97, 104; *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996), *rev'd on other grounds*, 135 F.3d 320 (5th Cir. 1998).

This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* In order to state a

cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*

A review of the certified copies of the administrative grievances and the responses reflect that the respondents, including the movants Day, Tanner and Creed, reviewed relevant portions of the medical records, as well as the merits of the responses given to the lower steps of the process before issuing their respective replies.[24]  In each instance, the response is based on information readily attainable from the medical records.  For these reasons, without any contrary summary judgment evidence from the plaintiff, the Court finds that the defendants acted reasonably in responding to the plaintiff's administrative grievances.

Therefore, the defendants Day, Tanner, and Creed are entitled to qualified immunity from the plaintiff's Section 1983 claims for denial of medical care resulting from their responses to the plaintiff's administrative grievances.

The defendant, Stalder, was not alleged as participant in the denial of Estevez's medical care.  To the extent that the motion includes Stalder, it is denied.

### C.    <u>Causal Connection</u>

The defendants further contend that the plaintiff has failed to allege a causal connection between their acts and the Section 1983 claims alleged.  The Court has already addressed the applicability of the qualified immunity doctrine to defendants Day, Tanner, and Creed.  This argument is therefore moot as to those defendants.

---

[24]  Rec. Doc. 20, Attachments

However, defendant Stalder did not argue his entitlement to qualified immunity with respect to the Section 1983 inadequate medical care claims. In addition, as addressed in the Court's frivolous review and in the review of the Motion to Dismiss, the record supports a finding that the plaintiff has adequately alleged personal connexity between defendant Stalder and the claims alleged. Defendant Stalder has offered no summary judgment evidence to resolve the genuine issues of material fact before the Court. The motion should be denied in this regard.

**D.    Failure to Exhaust Administrative Remedies**

The defendants, Stalder, Day, Tanner, and Creed also argue that Estevez failed to exhaust his administrative remedies as to the claims raised against them herein. With respect to these defendants, the only claims remaining are the ADA claims and the Section 1983 claims against defendant Stalder in his individual capacity.

Title 42 U.S.C. § 1997e provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is to be considered as a threshold matter. *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133 (1999).

The defendants have alleged that the plaintiff failed to exhaust his administrative remedies codified at La. Rev. Stat. Ann. § 15:1171.[25]    Louisiana and the DOC have adopted an

---

[25] Section 15:1171 provides as follows:

A.    The Department of Public Safety and Corrections and each sheriff may adopt an administrative remedy procedure at each of their adult and juvenile institutions, including private prison facilities, in compliance with 42 United States Code 1997, the "Civil Rights of Institutionalized Persons Act", or CRIPA, and Part 40 of Title 28, Code of Federal Regulations.

administrative remedy process which would afford plaintiff monetary damages if successful. *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999). Estevez has not alleged that he has exhausted these remedies and the record does not contain any indication that he has exhausted the ADA and Section 1983 claims against defendant Stalder. The grievance forms contained in the record relate to the denial of medical care, access to the weight equipment, and to the plaintiff's duty status.[26]

However, the United States Fifth Circuit has held that the Section 1997e exhaustion requirement is not jurisdictional. As such, it is subject to certain defenses and may be excused where dismissal would be inefficient and would not further the interests of justice or the Congressional purposes behind the Prison Litigation Reform Act of 1996 ("PLRA"). *Underwood,*

---

B.  The department or sheriff may also adopt, in accordance with the Administrative Procedure Act, administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof, the contractor operating a private prison facility or any of its employees, shareholders, directors, officers, or agents, or a sheriff, his deputies, officers, or employees, which arise while an offender is within the custody or under the supervision of the department, a contractor operating a private prison facility, or a sheriff. Such complaints and grievances include but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Such administrative procedures, when promulgated, shall provide the exclusive remedy available to the offender for complaints or grievances governed thereby insofar as federal law allows. All such procedures, including the adult and juvenile offender disciplinary process, promulgated and effective prior to June 30, 1989, shall be deemed to be the exclusive remedy for complaints and grievances to which they apply insofar as federal law allows.

C.  The department or sheriff may also adopt procedures for adult or juvenile offenders to discover and produce evidence in order to substantiate their claims and promulgate rules and regulations governing the recommendation, review, and approval of an award for monetary relief.

D   For the purposes of this Part, status as an "offender" is determined as of the time the basis for a complaint or grievance arises. Subsequent events, including posttrial judicial action or release from custody, shall not affect status as an "offender" for the purposes of this Part.

[26] Rec. Doc. 20, Attachments, Medical Records and Grievance Forms.

151 F.3d at 296.  The PLRA was designed to bring relief to the federal courts overburdened with frivolous prisoner lawsuits.  *Id.* at 296.

In the instant case, the Court is faced with a request to dismiss the plaintiff's claims against certain defendants.  The dismissal of these claims will not end the present litigation.  Instead, the remaining ADA and Section 1983 claims against Stalder, Day, Tanner and Creed proceed forward.  If the plaintiff exhausts the available administrative remedies, he would have the right to simply re-file the claims upon exhaustion.

In addition, the Court notes that the plaintiff is no longer incarcerated.  While Louisiana law has been amended to provide that he is still required to exhaust the administrative process,[27] the logistics of having to engage in administrative proceedings at the prison seemingly would not serve judicial economy or the purpose of the PLRA.  *See Orange v. Strain*, No. 97-1010, 2000 WL 158328 (E.D. La. Feb. 10, 2000).  For these reasons, it is recommended that the defendants' **Motion for Summary Judgment (Rec. doc. # 75)** for Estevez's failure to exhaust the available state law remedies regarding his ADA and Section 1983 claims against Stalder, Day, Tanner, and Creed should be **DENIED**.

### E.    The ADA

The defendants allege that the plaintiff has failed to present a claim under the ADA since the plaintiff has access to weights at WCI if his duty status would allow it.  In addition, the defendants contend that they do not qualify as "employers" under the Act and therefore cannot be held liable.

---

[27] An inmate who is no longer in physical custody of the state must still exhaust the Louisiana administrative remedy process.  *King v. Louisiana*, 754 So.2d 1119 (La. App. 1st Cir. 2000).

For the reasons assigned in connection with the frivolous review and the other motions, the plaintiff has stated a claim under Title II of the ADA. The defendants interestingly enough contend that Estevez cannot get a work status to allow him to use weights because of his disability, yet, because the weights are at the prison, he does not need outside physical therapy. This circular argument is precisely the reason why the plaintiff has urged his claims and why this summary judgment motion should be denied, except to the extent that the claims against the defendants in their individual capacities must be dismissed for the reasons cited above.

**F.    The Rehabilitation Act**

The defendants, Stalder, Kay, Tanner & Creed also contend that the plaintiff cannot succeed on his claims under the Rehabilitation Act since the "weight pile" at WCI is not a program or facility which receives federal financial assistance. The Court has previously addressed the issue during its frivolous review. It has previously recommended that this claim be dismissed. Therefore, the defendants Stalder, Day, Tanner, and Creed's request is denied as moot.

**VII.  Recommendation**

For the reasons assigned herein, it is **RECOMMENDED** that the following claims be **DISMISSED WITH PREJUDICE** as frivolous under Title 28 U.S.C. § 1915(e)(2):

1)    The plaintiff's **Americans with Disabilities Act** claims against the defendants Arshad, Day, Tanner, Miller, McGinnis, Carter, Stalder, Tran, Creed, McCloud, and Breland, in their individual capacity only;

2)    The plaintiff's **Rehabilitation Act claims** against the defendants Arshad, Day, Tanner, Miller, McGinnis, Carter, Stalder, Tran, Creed, McCloud, and Breland, in both their official and individual capacity;

3)    The plaintiff's **Section 1983 claims and state law claims seeking monetary damages** against the Louisiana Department of Corrections and the defendants

Arshad, Day, Tanner, Miller, McGinnis, Carter, Stalder, Tran, Creed, McCloud, and Breland, in their official capacity only, pursuant to the Eleventh Amendment;

4)     The plaintiff's **claim for injunctive relief** because the plaintiff has been released from prison rendering this claim moot.

**IT IS FURTHER RECOMMENDED** that:

1)     The defendants Stalder, Day, Tanner, and Creed's **Motion to Reurge (Rec. Doc. 53)** be **GRANTED**;

2)     The Louisiana Department of Corrections's **Motion to Reurge (Rec. Doc. 57)** be **GRANTED**;

3)     The defendants Stalder and Creed's **Motion to Strike Plaintiff's Prayer for Attorney's Fees (Rec. Doc. 36)** be **GRANTED**;

4)     The Louisiana Department of Corrections's **Motion to Dismiss (Rec. Doc. 26)** be **DENIED as moot**. It is further **RECOMMENDED** that the defendant's request for costs in connection the motion to dismiss be **DENIED**;

5)     The defendants Stalder, Day, Tanner, and Creed's **Motion to Dismiss (Rec. Doc. 38)** be **DENIED**;

6)     The defendants Stalder, Day, Tanner, and Creed's **Motion for Summary Judgment (Rec. Doc. 75)** be **GRANTED IN PART AND DENIED IN PART**, as follows:

   a)     To the extent the defendants Day, Tanner, and Creed request judgment on the plaintiff's Section 1983 claims arising out of their individual capacity, on the basis of qualified immunity, be **GRANTED**;

   b)     To the extent the defendant Stalder requests judgment on the plaintiff's Section 1983 claims arising out of his individual capacity, on the basis of qualified immunity, be **DENIED**;

   c)     To the extent the defendants, Stalder, Day, Tanner and Creed request judgment, dismissing the plaintiff's Americans with Disabilities Act and the Rehabilitation Act claims, be **DENIED AS MOOT**, in light of the Court's frivolous determination.

   d)     The defendants Stalder, Day, Tanner, and Creed's Motion for Summary Judgment claiming that the plaintiff failed to exhaust his available administrative remedies should be **DENIED** as excusable.

e)    The defendants Stalder, Day, Tanner, and Creed's Motion for Summary Judgment seeking dismissal of plaintiff's Americans with Disabilities Act claims in their official capacity should be **DENIED**.

f)    The defendants' request for costs in connection with the Motion for Summary Judgment should also be **DENIED**.

The plaintiff should be permitted to **proceed forward on the merits** regarding the following claims:

1)    The Americans with Disabilities Act claims against the Department of Corrections and the defendants Arshad, Day, Tanner, Miller, McGinnis, Carter, Stalder, Tran, Creed, McCloud, and Breland in their official capacities only;

2)    The Section 1983 claims of inadequate medical care against defendants Stalder, Miller, McGinnis, Carter, Stalder, Tran, McCloud, and Breland, in their individual capacities only; and

3)    The state law claims against the defendants Stalder and Day, in their individual capacity.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___ day of ___ , 2001.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE