UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JORGE M. ESTEVEZ                    CIVIL ACTION

VS.                                 NO: 00-127

JAMEELA Y. ARSHAD, ET AL            SECTION: "R" (4)

RESPONSE TO DEFENDANT'S
MOTION FOR SUMMAY JUDGMENT
AND STATEMENT OF UNDISPUTED
MATERIAL FACTS

TO THE COURT:

PRO SE PLAINTIFF, JORGE M. ESTEVEZ NOT BEING AN ATTORNEY OR PROPERLY TRAINED TO PROPERLY LITIGATE THIS CLAIM REQUESTS THE FOLLOWING:

1.) THAT THE COURT READ THIS RESPONSE TO DEFENDANT'S MOTION LIBERALY.

2.) THAT THE COURT ACCEPT THIS RESPONSE AS TIMELY FILED AS PLAINTIFF NOW RESIDES OUT OF THE COUNTRY AND HIS ACCESS TO THE COURTS VIA U.S. AND GUATEMALAN MAIL SERVICE IS SLOW.

3.) THAT THE COURT CONSIDER THE ATTATCHED MOTION FOR APPOINTMENT OF COUNSEL AS NO "PUBLIC LAW LIBRARY" DEALING WITH UNITED STATES

PAGE 1 OF 11

CIVIL LAW EXISTS IN GUATEMALA NOR IS PLAINTIFF FLUENT ENOUGH IN SPANISH TO UNDERSTAND GUATEMALAN LAW BOOKS OR COMMUNICATE WITH A SPANISH SPEAKING "ONLY" ATTORNEY

4.) THAT THE COURT BE ADVISED OF PLAINTIFF'S CHANGE OF ADDRESS

JORGE M. ESTEVEZ
38 CALLE 10-45 ZONA 8
GUATEMALA, GUATEMALA

5.) THAT THE COURT ACCEPT INTO THE RECORD THE ATTACHED COPY OF A LETTER WRITTEN TO MR. JOHNNY CREED C/O MR. RICHARD STALDER ON 9-7-2000.

A. IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED MATERIAL FACTS PLAINTIFF STATES THE FOLLOWING:

1.) THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT AND THE COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS A MATTER OF LAW AND RULE IN FAVOR OF PLAINTIFF;

2.) THAT BY 'CHANCE ON 1-23-2001 PLAINTIFF RECEIVED A COPY OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT DATED 12-11-2000.

PAGE 2 OF 11

3) DEFENDANTS WOULD HAVE YOU BELIEVE PLAINTIFF'S RIGHT HEMIPARASIS (RIGHT SIDED WEAKNESS) IS DUE TO A FABRICATED AUTO ACCIDENT IN 1975. WHILE IN FACT PLAINTIFF'S EMPLOYMENT RECORDS FROM O.D.C.O. (OFFSHORE DRILLING AND EXPLORATION CO.) WILL SHOW THAT AS A ROUGHNECK AND DERRICKMAN FROM 1976 TO 1980 HE SHOWED "NO" SIGN OF WEAKNESS. ALSO FROM 1980 TO 1982 HE WAS EMPLOYED BY SHELL OIL OFFSHORE AS A ROUGHNECK. MEDICAL PHYSICALS TAKEN AT BOTH

4) DEFENDANTS MAY ALSO CHECK THEIR OWN RECORDS OF A PRIOR INCARCERATION AT HUNT CORRECTIONAL CENTER FROM WHICH I WAS RELEASED ON 2-8-1989. OR THE DISTRICT SUPERVISOR FOR THE U.S. IMMIGRATION DEPARTMENT, 421 WEST MAGNOLIA ST., VILLE PLATE, LA. WHO'S CUSTODY I WAS RELEASED TO AND HOUSED IN OAKDALE, LA., MEDICAL PHYSICAL TAKEN.

5) ON MARCH 2, 1990 PLAINTIFF COMPLAINED OF MUSCLE SPASMS (NOT PAIN) WHICH WERE DIAGNOSED BY DEFENDANTS AS FRAUDULUS SINCE PLAINTIFF IS PARALIZED ON THE RIGHT SIDE. THIS ONLY SHOWS DEFENDANTS LACK OF NEUROLOGICAL KNOWLEDGE AS ANY AN UNDERTAKER WILL TELL YOU. EVEN DEAD BODIES SHOW SIGNS OF MUSCLE SPASMS. JUST BECAUSE THE MUSCLE IS NUMB DOES NOT MEAN THE NERVES CAN NOT FUNCTION. RATHER THAN SEND ME TO AN EXPERT OR FOLLOW THEIR ORDERS DEFENDANTS CAUSED

PAGE 3 OF 11

me great irreparable damage. ~~I may~~

6.) Plaintiff, as their own medical records show was always being refered to physical therapy and urology but never taken. Many times they claim I was taken to physical therapy yet not only do MCLNO records show this to be false but their own medical department admits they were never able to aquire an appointment.

7.) As for plaintiff's refusal of medical care, it should be noted that M.C.L.N.O. resomended use of mechanical weights and indoor duty status to work indoors to increase the functional use of his upper right extremity and improve his coordination and strength not not to do strenous leg exercises 75 pound only leg exercises, the exercises were much to hard to do and walking in the gym was not what the therapist ordered.

8.) As for plaintiff's other refusals to accept medical care I am enclosing a copy of a letter I wrote to defendant Mr. Jonny Creed on 9-7-2000. Marked (Exhibit)

9.) As for my urology appointment not until over a year of suffering and filing for a Temporary Restraining order and preliminary injuction was it provided. Once the appointment was provided within a month plaintiff

Page 4 of 11.

RECEIVED THE MUCH NEED FOR SO LONG SURGERY ON HIS URINARY TRACK. IT HAD BEEN DELAYED FOR SO LONG THAT PLAINTIFF'S BLADDER WAS ALLOWED TO IMFLAME SO BAD THAT TILL PRESENT HERE IN GUATEMALA HE IS IN CONSTANT PAIN AND UNDER MEDICAL CARE TAKING PILLS FOR THE PAIN AND INFLAMATION. NEXT WEEK HE WILL ONCE AGAIN UNDERGO URINARY TRACK SURGURY AS DUE TO THE DELAY IN SURGURY AND LACK OF AFTERCARE HIS URINARY TRACK IS ONCE AGAIN BLOCKED.

10.) ON MARCH 22, 2000 PLAINTIFF MADE SICK-CALL COMPLAINING OF ABDOMINAL CRAMPS AND FEELING FREQUENT WANTING TO URINATE PAINS. A URINALISIS SAMPLE WAS OBTAINED TO SEE IF I HAD A KIDNEY INFECTION.

11.) ON 7-1-1999 DR. ARSHAD HAD CANCELED "ALL" MY MEDICAL APPOINTMENT INCLUDING ONE IN WHICH SHE HAD BEEN ADVICED OF MY NEEDED URINARY TRACK OPERATION, NOT KIDNEY INFECTION

12.) DEFENDANT, DR. JAMEELA ARSHAD A SELF PROCLAIMED NEUROLOGIST DECIDED WITH NO PRIOR EXAMINATION THAT NO NEED TO INQUIRE FROM A UROLOGIST WHETHER OR NOT I SHOULD HAVE SURGURY WAS NEEDED. SHE BASED THIS DECISION ON HER KNOWLEDGE AND EXPERIENCE AS A MEDICAL DOCTOR. AND NO DOUBT SHE TOOK A COURSE IN UROLOGY MAKING HER A UROLOGISTS.

13.) PLAINTIFF SOUGHT MEDICAL CARE HERE

PAGE 5 OF 11

IN GUATEMALA REGARDING HIS GLUCOSE LEVEL AND AFTER A BATTERY OF BLOOD TESTS IT HAS BEEN DETERMINED THAT PLAINTIFF IS IN FACT DIABETIC. PLAINTIFF HAS BEEN PLACED ON A STRICT NO SUGAR DIET AND INSTEAD OF MEDICATION HE IS REQUIRED TO WALK AT LEAST A MILE AFTER MEALS.

14.) ON MAY 2, 2000 PLAINTIFF FILED HIS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT NOT ONLY NAMING THE PROPER DEFENDANTS VIOLATING HIS 8TH AMMENDMENT RIGHT TO ADEQUATE MEDICAL TREATMENT BUT ALSO RAISING A CLAIM THAT DR. JAMEELA Y ARSHAD AND THE NAMED DEFENDANTS IN RETALIATION FOR INVOKING THE ADMINISTRATIVE REMEDY PROCEDURE SYSTEM AS IS HIS LEAGAL RIGHT PLOTED TOGETHER TO CANCEL NOT ONLY HIS PHYSICAL THERAPY APPOINTMENT PRIOR TO IT BEING PROVIDED BUT "ALL" MEDICAL APPOINTMENTS INCLUDING HIS REFERAL TO THE UROLOGY CLINIC.

15.) NOW 2 YEARS LATER PLAINTIFF STILL SUFFERS CONTINUED PHYSICAL PAIN FROM AN INFLAMED BLADDER DUE TO A URINARY TRACK COMPLICATION LEFT UNTREATED FOR OVER A YEAR BECAUSE HE USED HIS RIGHT TO SEEK ADMINISTRATIVE AND JUDICIAL ASSISTANCE.

16.) DR. ARSHAD, JUDGING BY THE FACTS, THAT MUCH NEEDED SURGURY, NO MATTER HOW MUCH PAIN PLAINTIFF COMPLAINED OF WAS NOT NECESSARY AND COULD BE DELAYED REGARDLESS

PAGE 6 OF 11

OF THE CONSEQUENCES UNTIL AFTER HIS RELEASE. YOU CAN NOT SAY SHE WAS NOT AWARE OF THE PROBLEM AS SHE WAS INFORMED OF MY MEDICAL PROBLEM BY A SURGEON FROM M.C.L.N.O. IN LIGHT OF ALL THE FACT YOU CAN NOT SAY THAT HER ACTIONS WERE OBJECTIVELY REASONABLE.

17.) PLAINTIFF HAS SHOWN THAT THE NAMED DEFENDANT VIOLATED HIS EIGTH AMMENDMENT RIGHT TO ADEQUATE MEDICAL CARE AND RETALIATED FOR EXPRESSING HIS RIGHT TO INVOKE THE A.R.P. SYSTEM. THEIR CONDUCT CLEARLY SHOWS A VIOLATION OF PLAINTIFF'S CLEARLY ESTABLISHED STATUTORY AND CONSTITUTIONAL RIGHTS OF WHICH A REASONABLE PERSON WOULD HAVE KNOWN.

18.) PLAINTIFF IS NOT ATTEMPTING TO ASSERT A STATUTORY AND CONSTITUTIONAL VIOLATION AGAINST THE DEFENDANTS BASED ON THEIR SIGNING OF A.R.P. FORMS BUT ALSO ON VARIOUS LETTERS AND PERSONAL CONVERSATIONS AND THE FACT THROUGHOUT ALL THIS THEY HAVE BEEN MADE AWARE BY MY MANY MOTIONS TO THE COURT WHICH THEY ANSWERED NOT BY PROVIDING ADEQUATE MEDICAL CARE OR STOPPING THEIR RETALIATORY ACTIONS BUT BY CRYING THEY ARE ENTITLED TO QUALIFIED IMMUNITY.

19.) THE CHANGING OF PLAINTIFF'S DUTY STATUS ON MAY 11, 1999 TO READ THAT HE

may exercise his legs on the weight pile for 30 minutes every day is not a form of adequate physical therapy for someone in Plaintiff's condition as I stated, "the 'only' piece of leg exercise equiptment on the weight pile has over 75 (seventy-five) lbs. welded on it," while Plaintiff could barely handle 15 (fifteen) pounds. This too appeared to be an act of retaliation in light of the fact that it and "all" my duty statuses stated "no lifting greater than '0' or '15' pounds. This was requested both by M.S.L. N.O. and their own physicians.

20.) As per my other refusals of medical care please see the enclosed letter dated 9-7-2000 to Mr. Johnny Creed marked "Exhibit".

21.) If Plaintiff failed to exhaust any administrative remedies it was only due to the fact that the Department of Corrections A.R.P. system is designed for individuals serving a much larger sentence than I had. This can be seen by the fact that my rease date came prior to my A.R.P.'s being exhausted.

22.) Plaintiff did not bring an action prior to exhausting his administrative remedies conserning prison conditions but rather the personal acts of the defendants. Revised Section 1997 (a) does

PAGE 8 OF 11

NOT APPLY, NOR WAS IT INTENDED TO APPLY TO PLAINTIFF'S COMPLAINT OF INADEQUATE MEDICAL TREATMENT OR RETALIATION.

23.) PLAINTIFF, DUE TO DEFENDANT'S FAILURE TO PROVIDE A PROPER PHYSICAL THERAPY PROGRAM MAY NEVER FULLY REHABILITATE AND HIS NATURAL HEALING ABILITIES DAMAGED FOR BEING MADE TO DO STRENOUS IMPROPER PHYSICAL EXERCISES.

24.) HIS BLADDER WAS ALLOWED TO INFLAME DUE TO DEFENDANTS FAILURE TO PROVIDE A URINARY TRACK OPERATION AS REQUESTED BY M.C.I.N.O. PHYSICIANS AND DUE TO THEIR FAILURE, ALMOST 3 YEARS LATER SUFFERS CONSTANT PAIN AND WILL BE FINALY OPERATED ON NEXT WEEK. SEE ENCLOSED EXHIBITS MARKED "A" "B" "C" I APPOLIGISE FOR NOT BEING ABLE TO PROPERLY TRANSLATE "A" AND "B" OTHER PHYSICAL TESTS WERE TAKEN.

25.) DEFENDANTS ARE LIABLE UNDER TITLE II OF THE ADA FOR DEFENDANTS NOT ONLY DENIED LIGHT DUTY INMATES (INMATES WITH DISABILITIES) THE BENEFITS OF USING THE WEIGHT PILE BUT FAILED TO ACCOMODATE THE WEIGHT PILE WITH SMALLER WEIGHTS USABLE BY THE HANDICAPPED.

26.) AS STATED IN MY AMMENDED AND SUPPLEMENTAL COMPLAINT JERMAINE ROACH, D.O.C. #307201 WAS ISSUED AN INFRACTION REPORT ON JULY 4, 1998 FOR SIMPLY SITTING IN THE WEIGHT AREA, AN AREA OFF LIMITS TO

PAGE 9 OF 11

disabled (handicapped) inmates, and exercising his legs by hand. Also, Raymond Harris D.O.C. #159183 a light duty inmate due to being excessively over weight and diabetic was denied access to the weight pile because of his disability after being prescribed to lift weights by his outside physician to both lower his weight and glucose level.

27.) The defendant is correct in stating the weight pile does not receive federal funds, at least not directly, but the State Department of Public Safety and Corrections does through the State of Louisiana for the housing of state inmates and caring for their physical and medical needs.

## Conclusion

In light of the statements herein, the defendants, as a matter of law are not entitled to judgment in their favor and their motion for summary judgment should be denied. Plaintiff has both shown that there is a causal connection between the defendants acts and the acts complained of and they are not entitled to qualified immunity. The plaintiff continued his A.R.P. remedies until his release to no avail and until his release and now continues to suffer great pain and everlasting harm due to their action and inaction.

The individual defendants and as an agency are subject to liability under the ADA

Page 10 of 11

AND THE REHABILITATION ACT. PLAINTIFF HAS SHOWN THAT HIS CLAIMS HAVE MERIT BOTH UNDER THE ADA AND REHABILITATION ACT AND IS ENTITLED TO JUDGMENT IN HIS FAVOR DENYING DEFENDANTS MOTION FOR SUMMARY JUDGMENT IN ALL RESPECTS.

RESPECTFULLY SUBMITTED,

*Jorge M. Estevez*

JORGE M. ESTEVEZ
38 CALLE 10-45 ZONA 8
GUATEMALA, GUATEMALA

CERTIFICATE OF SERVICE

I, JORGE M. ESTEVEZ UNDER PENALTY OF PURJURY HEREBY CERTIFY THAT A COPY OF THE FOREGOING MOTION WAS MAILED TO ATTORNEY MS. M. PENN, 601 POYDRAS, SUITE 1725, NEW ORLEANS, LA. 70130.

SIGNED AND DONE THIS 28TH DAY OF JAN., 2001

S/ *Jorge M. Estevez*

JORGE M. ESTEVEZ
38 CALLE 10-45 ZONA 8
GUATEMALA, GUATEMALA

PAGE 11 OF 11

(EXHIBIT)

TO: MR. JOHNNY CREED, ASST. SECRETARY D.P.S.C.
%  MR. RICHARD STALDER, SECRETARY D.P.S.C.
504 MAYFLOWER STREET
Bldg. 7, P.O. BOX 94304
BATON ROUGE, LA. 70804-9304

FROM: JORGE M. ESTEVEZ #75111
WASHINGTON CORR. INSTITUTE, RAIN-1

DATE: 9-7-2000

RE: ESTEVEZ V. ARSHAD, ET AL, # 00-CV-127

DEAR MR. CREED:

I would first like to inform you of my appreciation of the medical crew working at the W.C.I. Infirmary this past Labor Day weekend. The understanding and consideration Nurse Diane and crew showed in regards to my exercise program and stomach cramps should be commended.

As you may recall, on 6-28-99 I was prescribed a 1-3 lb. sand weighted wrist band, see A.R.P. 99-W.C.I.-0835, to wear while doing stretch exercises, to improve my coordination. I was not provided the first (1 lb.) sand weghted wrist band until 8-16-2000. Well over a year later, and then only after filing a legal complaint (see amended and supplemental

PAGE 1 of 5

COMPLAINT, ENTITLED ESTEVEZ V. ARSHAD, ET AL, #00-CV-127, STATEMENT 37.

ON 8-16-2000 I WAS ALSO GIVEN A W.C.I. "TREATMENT ORDER" FORM, TO REPORT TO THE INFIRMARY AT 6:00 A.M., 12 NOON, AND 6:00 P.M. FOR 1 HOUR, 7 DAYS A WEEK TO PERFORM WHAT THEY STATED WAS A MANDATORY EXERCISE PROGRAM. I SOON REALIZED THAT I WAS BEING MADE TO DO THIS IN RETALIATION FOR TAKING LEGAL ACTION TO BE PROVIDED THE WRIST BAND. KNOWING THAT IN FACT, I NEEDED THE STRETCH EXERCISES, I AGREED TO THEM AND BLENDED THEM IN WITH THEIR OVER EXERTIVE MUSCLE BUILDING EXERCISES.

TOWARDS THE END OF THE MONTH HOWEVER, I STARTED EXPERIENCING STOMACH PAINS. THE NIGHT OF SEPTEMBER 1ST. THE PAINS WERE SO SEVERE, THAT THE FOLLOWING DAY, SATURDAY SEPT. 2nd. I EXPLAINED MY PROBLEM AND ASKED NURSE DIANE TO ALLOW ME TO DO MOSTLY HAND EXERCISES. SHE GAVE ME PERMISSION BUT SUGGESTED THAT IF THE PAINS PERSISTED TO MAKE SICK-CALL. BY SUNDAY, SEPT. 3, ANY FORM OF EXERTION CAUSED THE PAIN TO INCREASE AND NURSE DIANE PERMITED ME TO RETURN TO THE DORM, AND LATER THAT EVENING I REQUESTED TO BE PLACED ON CALL-OUT TO SEE DOCTOR TRAN.

BY CHANCE, MONDAY MORNING, SEPT. 4TH. I WAS TAKEN TO MY M.C.L.N.O. UROLOGY CLINIC APPOINTMENT, ORIGINALY REFERED TO BUT IGNORED BY THE

PAGE 2 OF 5

INSTITUTION, THOUGH THE REFERAL WAS MADE BY THE M.C.L.N.O. E.N.T. SURGEON WHO PERFORMED MY NASAL SURJURY, UNTIL LEGAL ACTION WAS TAKEN AFTER AN OVER A YEAR DELAY. SEE A.R.P.-W.C.I.-00-0671 OR TEMPORARY RESTRAINING ORDER SOUGHT IN ESTEVEZ V. ARSHAD, ET AL.

PRIOR TO THIS I HAD BEEN SEEN AT THE UROLOGY CLINIC ON AUGUST 15, 2000, AND AFTER ATTEMPTING TO INSERT A CATHETER TUBE INTO MY URINARY CANAL AND ENCOUNTERING BLOCKAGE, X-RAYS WERE TAKEN OF MY PENIS AND BLOCKAGE WAS DEFINATELY NOTED. I WAS THEN RETURNED TO THE INSTITUTION AND TOLD BY THE M.C.L.N.O. PHYSICIAN THAT AN APPOINTMENT WOULD BE SCHEDULED FOR A CONFERENCE WITH AN EXPERT IN UROLOGY.

ON SEPT. 5, 2000 I WAS RETURNED TO THE CLINIC FOR MY CONFERENCE WITH THE UROLOGY EXPERT. UPON EXAMINING MY RECORDS, READING MY X-RAYS AND HEARING MY COMPLAINT OF ABDOMINAL PAINS SHE STATED AMONG OTHER ~~OTHER~~ THINGS THAT MY URINARY TRACK WAS IN FACT BLOCKED, NOT ALLOWING ME TO FULLY EMPTY MY BLADER. SHE RECOMENDED THAT I'D EITHER DISCONTINUE THE STRENEOUS MUSCLE BUILDING EXERCISES OR REFUSE THE TREATMENT ALTOGETHER.

ON SEPT. 6, 2000 I WAS PLACED ON DR. CALL-OUT AS REQUESTED. PRIOR TO THIS DATE,

PAGE 3 OF 5

KNOWING THAT DOCTOR TRAN IS ORIENTAL AND FEARING HE WOULD NOT BE ABLE TO COMPREHEND ME, AS I DO HAVE A SPEECH IMPEDIMENT, I TOOK THE LIBERTY OF WRITING MEDICAL REGARDING WHAT I BELIEVED TO BE STOMACH CRAMPS. WHEN I REPORTED TO HIS OFFICE HE APPEARED TO BE QUITE INFURIATED WITH ME FOR IMPLYING THAT HE FAILED TO UNDERSTAND ME. I TRIED TO EXPLAIN ALL THE UROLOGY EXPERT HAD SAID AND REQUESTED TO STOP THE EXERCISE PROGRAM TEMPORARELY BUT, THE FACT THAT I HAD SPOKEN TO ANOTHER DOCTOR IN REFERENCE TO MY EXERCISE PROGRAM APPEARED TO INFURIATE HIM EVEN MORE.

    HE ORDERED ME OUT THEN AND AS CUSTOMARY, PRIOR TO LEAVING I SAT AT MS. LUCILLE NICHOLS, NURSES DESK. THERE SHE READ HIS NOTES AND STATED, "THE "ONLY" WAY TO STOP THE EXERCISES IS TO SIGN HERE AND REFUSE THE TREATMENT." REMEMBERING WHAT THE UROLOGIST HAD SAID, I SIGNED. AFTER I SIGNED MS. LUCILLE NICHOLS STATED "I TOLD YOU IT WOULDN'T BE EASY" DR. TRAN DID PRESCRIBE GAS PILLS.

    I WROTE THE PRECEEDING TO INFORM AND BRING YOU UP TO DATE AS TO MY NEUROLOGIST PRESCRIBED 1-3 LB. SAND WEIGHTED WRIST BAND, THE IMPORTANCE OF MY UROLOGY CLINIC APPOINTMENTS AND TO LET YOU KNOW THAT I WOLD NEVER REFUSE A PROPER THERAPUDIC

PAGE 4 OF 6

PROGRAM DESIGNED BY A QUALIFIED THERAPIST. I WAS GIVEN A CHOICE, EITHER SIGN THE REFUSAL OF TREATMENT FORM OR COMPLY TO A PAIN CAUSING TREATMENT PLAN ORDER DESIGNED BY DR. TRAN AND A FEW OF HIS STAFF.

THIS MAKES THE THIRD TIME I'VE HAD TO REFUSE TREATMENT. THE FIRST TIME BEING ON OR ABOUT 6-17-99, UPON MY RETURN FROM THE M.C.L.N.O. OCCUPATIONAL THERAPY CLINIC. MY THERAPIST BEING UNDER THE IMPRESSION THAT INDOORS MEANT IN THE DORMITORY, REQUESTED THAT I'D BE ALLOWED TO PERFORM LIGHT DUTY INDOORS TO INCREASE THE FUNCTIONAL USE OF MY RIGHT ARM, BY IMPROVING ITS STRENGTH AND COORDINATION. I REQUESTED AN "IN DORM" DUTY STATUS BUT THE INFIRMARY NURSE, I BELIEVE MS. LUCILLE NICHOLS, DENIED MY REQUEST. AS STATED IN A.R.P. W.C.I. 00-0032 INMATES ON "LIGHT DUTY INDOORS" ARE SENT TO THE GYM AND ALMOST EVERYDAY ARE MADE TO WALK IN A CIRCLE, ARMS HANGING AT THEIR SIDES, EVERY 15 MIN. FOR ABOUT 6 HOURS. IT WAS EITHER SIGN THE REFUSAL AND KEEP MY PRESENT COMPOUND CREW DUTY STATUS WHERE I ATLEAST USE MY ARM PICKING UP PAPER AND CIGARETTE BUTS, OR WALK AROUND THE GYM ARMS DANGLING AT MY SIDES.

PAGE 5 OF 6

THE SECOND TIME WAS DUE TO ANOTHER EXERCISE PROGRAM DESIGNED BY DR. TRAN AND NURSE LUCILLE NICHOLS. THIS EXERCISE PROGRAM CONSISTED OF SWINGING A 2 Lb. METAL DISK WEIGHT AROUND. AFTER ONLY A COUPLE SESSIONS HOWEVER, I WAS TAKEN TO THE M.C.L.N.O. OCCUPATIONAL THERAPY CLINIC AND ADVICED THAT I REFUSE THE PROGRAM. HE STATED THAT IT WOULD DO MORE HARM THAN GOOD.

THANKING YOU FOR YOUR TIME AND ATTENTION, I REMAIN

VERY TRULY YOURS

*Jorge M. Estevez*

JORGE M. ESTEVEZ #75111
WASHINGTON CORR. INSTITUTE
27268 HWY. 21, RAIN-1
ANGIE, LA. 70426

PAGE 6 OF 6

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**